UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KIMBERLY R.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:21cv47 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, § 1383(c)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since July 15, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.) (Exhibits 7D; 8D).

   The claimant has the following severe impairments: morbid obesity; sleep apnea; lumbar degenerative disc disease; Hoshimoto's [sic]/hypothyroidism with thyroid nodule; anxiety with panic disorder; depression, and GERD (20 CFR 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift/carry up to 20 pounds occasionally and lift/carry up to 10 pounds frequently; never climb ladders, ropes or scaffolds; never crawl; occasionally climb ramps and stairs, balance, stoop, crouch and kneel; have occasional exposure to wet, slippery or uneven walking surfaces; occasional exposure to hazards such as moving mechanical parts or unprotected heights; occasional exposure to vibration, such as vibrating hand tools; limited to a work environment with a moderate noise intensity level as defined in the Selected Characteristics of Occupations and to occupations that do not require driving motor vehicles at work. The claimant is able to understand, remember and carry out work that consists of no more than simple and routine tasks in a work environment free of fast paced or timed piece rate production work, but she can meet end of day goals; she can perform routine judgment defined as being able to make simple work-related decisions, and she is limited to simple workplace changes as well as occasional interaction with coworkers, and no tandem tasks or teamwork where one production step is dependent on a prior step and no interaction with the public.

5. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6. The claimant was born on June 9, 1988 and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

3

7.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 30-38).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on November 24, 2021. On December 29, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on January 26, 2022**.** Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her

4

>former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Prior to Plaintiff's onset date, she treated for obesity, back pain and anxiety. (Tr. 482, 485, 1126, 1128, 1141). Around her onset date, she treated for lower back pain and was having a flare. (Tr. 478-79). Other impairments included a thyroid problem and dizziness. (Tr. 472-74). She suffered from abdominal pain for which she eventually underwent a cholecystectomy. (Tr. 417, 459-62, 464, 467-68, 890, 938, 973). Plaintiff treated for frequent panic attacks, anxiety and poor concentration. (Tr. 452). She also reported lower back pain for which she was prescribed Norco. (Tr. 453). Plaintiff suffered dizziness and balance issues as well as migraines for which she was prescribed Topamax. (Tr. 442-44). For her lower back, she had reduced range of motion to the lumbar spine and paraspinal tenderness. (Tr. 431-32). A lumbar spine MRI showed broad-based annular disc bulges at L3-5 with annular tear and central disc protrusion at L4-5. (Tr. 429). Her body mass index ("BMI") was listed at 54. (Tr. 426). Plaintiff reported depression, anxiety, suicidal ideations and hallucinations. (Tr. 414). She reported experiencing panic attacks when driving and suffering from an episode of lower back pain. (Tr. 1153-57).

In 2017, Plaintiff treated for anxiety and depression. Her PHQ-9 score was 20, which was indicative of severe mental impairments. She was referred to the Behavioral Health Clinic (BHC).

She had an inappropriate effect on examination and was prescribed Valium. (Tr. 649-53). In therapy, her mood was depressed and affect was flat. Zoloft was prescribed. Her PHQ-9 was at 17. (Tr. 642-45). Buspar was stopped due to hot flashes and Lexapro was helping take panic attacks down from 1-2 times per day to 1- 2 times per week. (Tr. 632). She did not want to increase medication out of fear it would make her numb mentally. (Tr. 627).

In 2018, Plaintiff met with pain management specialist, Dr. Rohit Puranik, for lower back pain. She was having problems with sitting, standing, walking and lying down. On examination, Plaintiff had antalgic behavior ambulating and moderate to severe range of motion testing as well as positive straight leg raising on the left. (Tr. 655-58). She was prescribed physical therapy, Norco, Skelaxin (a muscle relaxant) and a Lidoderm patch. (Tr. 658). She had pain and numbness running into her toes on her left. Plaintiff reported "tremendous pain" for the last 6 months to a year. An X-ray showed severe disc disease at L4-5. A MRI confirmed disc disease without stenosis. Due to the fact it was not a spinal issue, a neurologist was recommended. (Tr. 678-79, 684). On exam, Plaintiff had antalgic behavior and ambulated with moderate difficulty. (Tr. 725). On September 26, 2018, Plaintiff was prescribed hydrocodone for her back pain. (Tr. 737). On December 19, 2018, Plaintiff received a lumbar injection at L4-5 which took her back pain down to a 8/10. Her pain was purely axial pain exacerbated by prolonged stand/sitting and excessive activity and alleviated by rest. (Tr. 1187-88).

On October 8, 2018, Plaintiff underwent a psychological consultative examination by Dr. Caryn Brown, PsyD. Upon examination Plaintiff's mood was anxious and she demonstrated some impairment in her ability to sustain her attention and concentration. (Tr. 696-99). On January 11, 2019, Plaintiff underwent a physical consultative examination by Dr. R. Gupta. Plaintiff's BMI

was at 65.3. (Tr. 747). She had a restricted range of motion of the lumbar spine. She was able to heel and toe walk with difficulty and could not stoop or squat completely. Dr. Gupta opined that Plaintiff was unable to do work related activities like prolonged sitting, standing and walking due to lower back pain and stiffness. (Tr. 746-49).

On February 20, 2019, Plaintiff received a medical branch block at L3-S1. (Tr. 1191). The branch block helped for at least four hours. (Tr. 1194-95). A second branch block could not be administered due to insurance issues and physical therapy was prescribed. (Tr. 1198-99, 1218-69). In October 2019, Plaintiff had tripped on the stairs and another block was administered on October 22, 2019. (Tr. 1284, 1297). Mentally, Plaintiff reported issues leaving her home and was diagnosed with agoraphobia. She had a PHQ-9 score of 18. Lexapro was restarted. (Tr. 1168-69, 1172).

In support of remand, Plaintiff first[2] argues that the ALJ erred in her subjective symptom analysis. SSR 16-3p describes a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304. If there is such an impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In evaluating a claimant's symptoms, an ALJ must consider objective medical evidence, the individual's own statements, and evidence from non-medical sources, considering

---

[2] In her Opening Brief, Plaintiff argued that the ALJ's Step Five analysis was flawed. However, in her reply brief, Plaintiff states that she now waives her Step five arguments. Thus, those arguments will not be discussed herein.

the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id*. An ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). An ALJ's "failure to adequately explain his or her credibility finding … is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Here, the ALJ held that "after careful consideration of the evidence…the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons stated in this decision".[3] (Tr. 33).

Plaintiff contends that the ALJ only considered some of her symptoms and treatments. As the Commissioner notes, the ALJ discussed Plaintiff's medication (Lexapro, Norco, muscle relaxant, Lidocaine patch, back injections, Percocet, hypothyroidism medication, Omeprazole, Nexium, Valium); treatment, other than medication (counseling from her primary care physician, physical therapy, chiropractic care, CPAP); measures used to relieve pain or other symptoms

---

[3] In a very recent opinion, the Seventh Circuit described this boilerplate language as "common, but regrettably Delphic...". *Mandrell v. Kijakazi*, No. 21-1121, Slip Op. *5 (7th Cir. Feb. 8, 2022).

8

(sleeping in a recliner); precipitating and aggravating factors (riding in a car, being stuck in traffic); and, daily activities (does not drive) (Tr. 33-35).

Plaintiff, however, points to the following errors. The ALJ states that since 2016, there was no evidence of injections (Tr. 34), yet Plaintiff underwent lumbar injections at L4-5 and medial branch blocks in November of 2018, February of 2019 and November of 2019. (Tr. 1184, 1191, 1297). The ALJ points to Exhibit 12F/14 for "improvement" with opioids and a muscle relaxer, but at this visit Plaintiff reported worsening pain (Tr. 34, 1090) and thereafter treated with a pain specialist and received Norco prior to injection therapy. (Tr. 658, 1184, 1191, 1297). The ALJ acknowledged abnormal findings at an October 2019 visit with a pain management specialist, but stated that Plaintiff "had no neurological deficits". (Tr. 34, 742). Yet, the ALJ ignores that at this visit, Plaintiff's pain was chronic and severe, at times causing severe functional limitations. Also, Plaintiff had failed usual conservative treatment measures for at least three months or was not a candidate for such measures. (Tr. 742).

Additionally, the ALJ appears to have relied on Dr. Gupta's consultative exam (Tr. 746-49) for support that Plaintiff was capable of sedentary work. (Tr. 34-35). Yet, Plaintiff had a significantly reduced range of motion at the examination, could not stoop or squat completely and had a slow gait. Based on his examination, Dr. Gupta found Plaintiff was unable to do prolonged sitting and standing, consistent with other record evidence. (Tr. 746-49). Nonetheless, the ALJ held that Plaintiff is capable of occasionally stooping and kneeling, defined in SSR 96-9p as up to 1/3 of the workday, as well as sitting for up to six hours in a workday. (Tr. 32).

With respect to Plaintiff's mental health, the ALJ stated that Plaintiff "was never psychiatrically hospitalized and does not receive regular mental health treatment". (Tr. 35).

9

Plaintiff points out, however, that her primary care providers were treating her mental health, prescribing Valium for anxiety, which was later switched to Cymbalta (Tr. 453; 473-74). Also, in individual therapy, Plaintiff was diagnosed with moderate major depression and her mood was depressed and effect was flat. (Tr. 642-45). Buspar was stopped and Lexapro was continued. (Tr. 632). Dr. Caryn Brown, the psychologist consultative examiner, noted that Plaintiff demonstrated some impairment in her ability to sustain attention and concentration on the examination, which facts the ALJ failed to mention. (Tr. 696-99).

As the courts have repeatedly stated, an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Mandrell v. Kijakazi*, No. 21-1121, Slip. Op. *10 (7th Cir. Feb. 8, 2022) (remanding where "there is too much in this record that cannot be reconciled with the ALJ's ultimate conclusion."); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("In coming to his decision...the ALJ must confront evidence that does not support his conclusion and explain why it was rejected."). An ALJ may not select and discuss only that evidence that favors his ultimate conclusion. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). As the ALJ herein failed to address considerable evidence (subjective and objective) suggesting that Plaintiff's impairments are more limiting than the ALJ found, remand is warranted.

Plaintiff also argues that the ALJ erred in her analysis of the medical opinion evidence. On January 11, 2019, Dr. Gupta performed a medical consultative examination. (Tr. 746-750). Dr. Gupta concluded that Plaintiff was "unable to do work related activities such as prolonged sitting, standing, and walking long periods of time due to lower back pain and stiffness but is able to do any light lifting, carrying or handling of objects". (Tr. 749). The ALJ found Dr. Gupta's

opinion not persuasive, explaining that it was "vague and not specific in terms of functional limits".[4] (Tr. 36). The ALJ further noted that "this opinion does not actually define what is meant by prolonged standing/walking" (Tr. 36).

Plaintiff challenges the ALJ's consideration of Dr. Gupta's opinion, specifically Dr. Gupta's observation that Plaintiff was "not able to stoop and squat completely" (Tr. 748). The Commissioner argues that sedentary work is performed primarily in a seated position and doesn't require significant stooping.  Plaintiff, however, was found by Dr. Gupta to not be able to stoop (or squat) at all.  Additionally, with respect to standing and sitting, Dr. Gupta indicated that Plaintiff cannot do either on a "prolonged" basis.  As the Plaintiff points out, sitting for 6 hours a day, seven days a week, as required by sedentary work, would easily qualify as "prolonged" sitting.

Plaintiff also objects to the ALJ's analysis of Dr. Brown, the psychological consultative examiner.  Dr. Brown found that Plaintiff demonstrated impairment in her ability to sustain attention and concentration. (Tr. 696-99). Plaintiff contends that this was not adequately reflected in the RFC assessment which found that Plaintiff "is able to understand, remember and carry out work that consists of no more than simple and routine tasks in a work environment free of fast paced or timed piece rate production work... is limited to simple workplace changes as well a occasional interaction with coworkers... and no interaction with the public." (Tr. 32).  Elsewhere, the ALJ found that, due to panic attacks, Plaintiff's interaction with supervisors and coworkers

---

[4] This is a recurring problem with Dr. Gupta's consultative opinions and the Court has noted before that its unfair for the Administration to solicit a consultative examination, which turns out to be at least partly favorable to the claimant, and then disregard the opinion on the basis that it is "vague".

11

needed to be brief. (Tr. 36). Yet the RFC provides for "occasional" interaction with coworkers, (or up to one third of an 8-hour work day) which is considerably more interaction than "superficial" or " brief" interaction.

Therefore, remand is required for a proper analysis of the opinions of Dr. Gupta and Dr. Brown.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: February 10, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court